UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

AARON J. THOMPSON,

                    Petitioner,

    v.

MICHAEL J. ASTRUE,

                    Respondent.

Case No. 1:09-cv-00474-CWD

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Pending before the Court for its consideration is the Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed by Aaron Thompson ("Petitioner") on January 14, 2010. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on September 18, 2006, alleging disability since September 14, 2006, based on sciatic nerve pain, cyclothymia, psoriasis, and a learning disorder. His

application was denied initially and on reconsideration.  On December 11, 2008, a

hearing was conducted.  Administrative Law Judge Michael A. Kilroy ("ALJ Kilroy")

heard testimony from Petitioner, medical expert James Bruce, Ph.D., and vocational

expert Beth Cunningham.  ALJ Kilroy issued a decision finding Petitioner not disabled on

March 13, 2009.  Petitioner timely requested review by the Appeals Council, which

denied his request for review on July 30, 2009.  Petitioner appealed this final decision to

the Court.  The Court has jurisdiction to review ALJ Kilroy's decision pursuant to 42

U.S.C. § 405(g).

At the time of the hearing, Petitioner was thirty-eight years of age.  Petitioner has a

high school diploma, and previously worked as a general laborer/construction worker.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining

whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must

be determined whether the claimant is engaged in substantially gainful activity.  ALJ

Kilroy found that Petitioner had not engaged in substantial gainful activity since his

alleged disability onset date of September 14, 2006.  At step two, it must be determined

whether claimant suffers from a severe impairment.  ALJ Kilroy found that Petitioner had

the following severe impairments:  diabetes, sleep apnea, psoriasis, hypertension,

coronary artery disease, obesity, a history of headaches, gastroesophageal reflux disease,

bipolar disorder, and social anxiety with panic disorder.

Step three asks whether a claimant's impairments meet or equal a listed

impairment. ALJ Kilroy found that Petitioner's impairments did not meet or equal the requirements of a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

At step four, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, as in, whether the claimant has sufficient RFC to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). "In making this finding, the [ALJ] must consider all of the claimant's impairments, including impairments that are not severe (20 C.F.R. 404.1520(e) and 404.1545; SSR 96-8p)." In the instant case, ALJ Kilroy determined that, based upon Petitioner's RFC (*See* AR 14-21), Petitioner could not perform his past relevant work because it involved medium to heavy exertion levels.

If the claimant is unable to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the ability to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Based on the testimony of the vocational expert and using Medical-Vocational Rules 202.14 and 202.15 as a framework for his decision making, ALJ Kilroy concluded that Petitioner retained the ability to perform light work with several further limitations, and that occupations existed

**MEMORANDUM DECISION AND ORDER - 3**

in significant numbers in the national economy that Petitioner was capable of performing, such as document preparer, order clerk, and parking lot cashier. Therefore, ALJ Kilroy determined Petitioner was "not disabled" under step five of the evaluation. (AR 21-22.)

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than

a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). *See also*, *Carter v. Astrue*, 295 Fed. Appx. 868, 870 (9th Cir. 2008). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 5**

# DISCUSSION

Petitioner contends that ALJ Kilroy erred at step four by finding Petitioner not credible and by improperly rejecting his testimony concerning the intensity, persistence and limiting effects of his pain. Respondent replies that ALJ Kilroy provided clear and convincing reasons for his credibility determination, supported by substantial evidence.

Second, Petitioner argues that ALJ Kilroy erred at step five because the hypothetical question posed to the vocational expert mischaracterized the severity of Petitioner's mental impairments. Petitioner claims the hypothetical did not include all of Petitioner's limitations and therefore did not support the vocational expert's conclusion that Petitioner could maintain work as a document preparer or parking lot cashier. Respondent replies that ALJ Kilroy correctly characterized the vocational expert's testimony by not including elements in the hypothetical that were based only on Petitioner's self-reports, which ALJ Kilroy rejected as not credible.

Third, Petitioner contends that ALJ Kilroy erred at step four by failing to properly support his rejection of the treating source opinion with clear and convincing reasons. Because ALJ Kilroy did not refute the specific limitations outlined by Petitioner's treating source, Petitioner contends that ALJ Kilroy improperly rejected them. Respondent replies that ALJ Kilroy properly accepted the treating source's opinion regarding Petitioner's mental limitations, and properly distinguished the medical opinion from the treating source's opinions regarding vocational and legal conclusions.

Finally, Petitioner argues that ALJ Kilroy failed to take the lay testimony,

specifically the physician's assistant's opinion and Petitioner's wife's opinion, into account when assessing the severity of Petitioner's impairments and did not provide a basis for rejecting their opinions. Respondent replies that ALJ Kilroy provided germane reasons for the weight he placed on the physician's assistant's opinions, and that Petitioner asserted the wrong standard for the ALJ to apply to those opinions. Respondent further argues that ALJ Kilroy provided germane reasons for the weight he placed on Petitioner's wife's statements because they correspond to Petitioner's own statements.

After summarizing as background Petitioner's physical and mental impairments, the Court will address each of Petitioner's arguments in turn.

## 1. Background

Petitioner has a history of suffering from multiple physical and mental impairments, the majority of which are ongoing. Physically, his medical records reveal a history of a one-time episode of renal failure (AR 264, 266-7), abnormal liver function (AR 262), hypertension (AR 265), obesity (AR 264), intermittent headaches (AR 293, 313-317, 417-420, 448-453, 479-481), and back pain (AR 262), dating back at least as far as 2003. Although his renal and liver issues resolved by 2004, Petitioner's hypertension and psoriasis persisted. Petitioner's hypertension was treated by multiple providers with a litany of medication for fluctuating levels of severity. (*See* AR 261, 261, 265, 301-305-309, 355-357, 358-359, 360-361, 397-404, 409-416, 421-428, 445-453, 475-476, 479-481, 490-491, 515-518, 532-534, 544-548.)

Petitioner suffered from intermittent episodes of severe psoriasis since

**MEMORANDUM DECISION AND ORDER - 7**

approximately 2005. (*See* AR 275, 278, 301-304, 346-347, 355-361, 380-391, 448-453, 490-491, 515-518, 520, 532-534, 541-548.) Related symptoms included diffuse, pinkish-red erythema with white scales, guttate-sized plaques and lesions over his body (AR 275.) But, by March of 2008, his symptoms were under control. (AR 490-491.)

Likewise, Petitioner was diagnosed with diabetes mellitus, type 2, in 2007. (AR 433-436.) Despite intermittent episodes of neuropathy which affected Petitioner's feet, medical providers generally regarded Petitioner's diabetes as stable. (*See* AR 392-404, 409-412 425-432, 445-453, 544-547.)

Mentally, Petitioner has a history of controlled depression (AR 261), anxiety (AR 294), borderline intellectual functioning and a learning disability (AR 282-287) dating back to at least 2003, in addition to bipolar II disorder (AR 290-292) diagnosed in 2006. By 2007, Petitioner began complaining of feeling withdrawn and paranoid, and complained one time that he heard voices that others did not hear. (AR 288.) His bipolar symptoms were well-established in the record which, as described below, and presented mild limitations associated with activities of daily living, marked difficulties for social functioning, and moderate difficulties for concentration, persistence and pace. (*See* AR 13, 475-476, 479-481, 490-491, 515-518, 532-534, 548.)

## 2. Petitioner's Credibility

Petitioner argues that there was no explanation given by ALJ Kilroy for rejecting his testimony concerning the intensity, persistence and limiting effects of his pain. (Pet. at 13-14, Dkt. 12.) ALJ Kilroy concluded that Petitioner's statements concerning the

intensity, persistence, and limiting effects of his symptoms associated with his severe impairments were not credible. (AR 15.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in  claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In making his credibility determination, ALJ Kilroy concluded that Petitioner's allegations were inconsistent with the residual functional capacity assessment and the record as a whole.  (AR 15.)  ALJ Kilroy did not entirely discredit Petitioner's complaints of pain, however.  ALJ Kilroy determined that many of Petitioner's subjective complaints were incorporated into the RFC finding, such as those related to "lifting, standing, walking, sitting, and his need to alternate between these activities to relieve pain and/or discomfort."  (AR 15.)  Likewise, ALJ Kilroy acknowledged that "limitations would reasonably be expected to result from a combination of [Petitioner's] impairments of diabetes, obesity, cardiovascular disease, and psoriasis."  (AR 15.)

However, ALJ Kilroy noted discrepancies in Petitioner's claims, upon which he based his finding that Petitioner was not credible.  Discrepancies included the amount of

weight Petitioner was able to lift (AR 15), the severity of his symptoms (AR 17), the extent of numbness, pain and weakness in his arms and hands (AR 16), the severity of his alleged upper extremity numbness, pain, and weakness (AR 16), and reports that he was told he could not return to work (AR 16). As reviewed below, these discrepancies, as well as additional inconsistences not addressed by ALJ Kilroy in his Decision, are supported by the record before the Court.

### A. *Lifting*

Petitioner's self-reports regarding the intensity, persistence and limiting effects of his pain on lifting were inconsistent. In his Disability Report, Petitioner claimed that he could lift up to forty pounds before sciatic nerve pain became too intense. (AR 178.) However, in his function report, Petitioner claimed that he could lift only ten pounds. (AR 167.) Then, upon questioning by ALJ Kilroy during the hearing, Petitioner claimed that he could lift only about twenty to twenty-five pounds at one time. (AR 54.) Later at the hearing, Petitioner claimed that he could lift no more than thirty to forty-five pounds occasionally throughout the day. (AR 54.) After ALJ Kilroy pointed out that Petitioner gave conflicting responses, Petitioner agreed that he could lift only twenty to twenty-five pounds at one time, and ten to fifteen pounds occasionally. (AR 54-55.)

### B. *Extent, Severity or Frequency of Severity of Pain and Weakness*

Dr. Bruce testified at the hearing before the ALJ that Petitioner's medical records do not reflect the same extent, severity or frequency of severity of pain as alleged by Petitioner. (AR 77.) Such inconsistencies regarding severity included the changing

disability onset date (AR 19), as well as the extent of numbness, pain and weakness in his arms and hands (AR 16), the duration of his alleged upper extremity numbness, pain, and weakness (AR 16), and his alleged inability to stand or walk for any considerable amount of time, to which Petitioner complained to his treating source, Dr. Swartz.

### (1) Extent and Frequency of Aches, Pains, Numbness and Weakness

Petitioner complained to Dr. Swartz, on July 25, 2008, that numbness, pain, and weakness in his arms and hand had progressed over the previous two years, thereby interfering with his ability to bond with his baby. (AR 479-481). These complaints, however, are inconsistent with Dr. Swartz's own finding that day regarding Petitioner's strength and range of motion, and with the medical record as a whole, and Petitioner's testimony regarding his lifting abilities. Despite Petitioner's complaints that day, Dr. Swartz's progress notes indicate that Petitioner's strength in his shoulders, forearms, and hands measured 5/5, with full range of motion, and that Dr. Swartz simply prescribed over-the-counter medication to treat the same, none of which would be consistent with severe aches, pains, numbness or weakness of which Petitioner complained. (AR 479-481.)

Further, the record reflects no worsening, and no such complaints regarding Petitioner's arms and hands. Additionally, Petitioner testified during the hearing on December 11, 2008, that he had full range of motion in his arms and hands, and was able to use his hands and finger without limitation. (AR 49.) The medical record is simply devoid of any complaints regarding numbness in Petitioner's arms and hands, and

contains only one complaint of any sort of arm pain.[1]

### (2)  Ability to Stand and Walk Without Pain

Petitioner's self-reports regarding his ability to stand and walk without pain are inconsistent with an echocardiographic study and stress test, progress notes, portions of the function report, and Petitioner's testimony during the hearing.  Petitioner reported on his function report that he is limited to standing for a maximum of thirty minutes and walking up to ten feet without suffering debilitating pain.  (AR 167.)  Petitioner also reported that he is not able to climb any stairs.  *Id.*  However, the results of the echocardiographic study and stress test that Dr. Lopez administered on January 10, 2008, were normal.  (AR 533.)

Likewise, progress notes of Dr. Swartz and other providers that treated Petitioner do not support Petitioner's claims regarding his limitations related to standing and walking without pain.  In the three years preceding the hearing, Petitioner complained approximately five times of leg and foot pain, as well as tingling and burning in his feet which affected his mobility.  However, those symptoms generally resolved within a month's time.  (*See* AR 332-337, 425-428, 470-483, 501-505.)  On March 27, 2008, Petitioner reported to Dr. Swartz that he felt "so much better" and believed he could return to work.  (AR 490-491.)  Later, Petitioner complained to Dr. Hedge of foot pain,

---

[1]On August 11, 2005, Petitioner sought treatment from Savita Hedge, M.D.,  regarding complaints of back and neck pain, muscle spasms in his shoulder, and restricted range of motion in his back, due to moving heavy furniture and a washer and dryer.  Dr. Hedge prescribed Motrin and Flexeril, and Petitioner did not complain of any related symptoms until three years later when he presented to Dr. Swartz as noted above.  (AR 348-349.)

and severe hyperesthesia, numbness, tingling and burning on June 6, 2008. (AR 482-483.) But, Dr. Hedge prescribed foot medication, which relieved Petitioner's symptoms by the end of the following month. (AR 479-481.)

Although not addressed specifically by ALJ Kilroy in his Decision, limitations Petitioner claimed on the function report are also inconsistent with other portions of the record. Despite reporting that he could not walk up or down stairs and was limited to walking up to ten feet without suffering debilitating pain, Petitioner testified during the hearing that he could walk six blocks to get the mail (AR 61) and ascend and descend one or two flights of stairs (AR 52).

### (3) Severity of Symptoms

The record does not support Petitioner's claim that the severity of his symptoms prevented him from working in 2005 or 2006. Petitioner asserts an alternative onset date as far back as 2005; however, the record reflects that Kedron Holland, PA-C believed Petitioner's onset date would be approximately Spring of 2007, and that Petitioner was able to work two jobs in 2006. Although Petitioner claimed a disability onset date of September 14, 2006 (AR 134) and attempted to amend that date to 2005 during the hearing (AR 29), Ms. Holland reported that Petitioner's onset date was approximately Spring of 2007. (AR 447.)[2]

---

[2] Though not addressed by ALJ Kilroy, Ms. Holland reported in Petitioner's progress notes on June 27, 2006, that Petitioner was working two jobs during the day, which refuted Petitioner's claim that he was unable to work in 2006. (AR 313-317.)

## C.  *Other Inconsistencies Addressed by ALJ Kilroy*

The record does not support Petitioner's assertion to Dr. Swartz that he was told by a medical provider that he could not return to work.  On March 27, 2008, Petitioner reported to Dr. Swartz that a medical provider previously had told him that he could not return to work because of uncontrolled blood pressure and bipolar disorder.  (AR 490-491.)  However, the record is devoid of any such note or finding by any of Petitioner's health care providers.

## D.  *Inconsistencies not Addressed by ALJ Kilroy*

Although ALJ Kilroy did not address the following inconsistencies in the record before the Court, they support his conclusion that Petitioner was not credible.  More specifically, portions of Petitioner's self-reported function report dated October 18, 2006, were also inconsistent with other portions of the report, and inconsistent with Petitioner's testimony during the hearing.  Additionally, Petitioner's counselor noted that Petitioner's reported history of discomfort in social settings was inconsistent with the counselor's knowledge of his social activities.

Petitioner indicated on the function report that he could mow the lawn, do laundry, vacuum, and clean the bathroom.  (AR 164.)  Further, he reported that he could take his son to and from school, use the computer, take a shower, care for the family dog, and feed himself.  (AR 162-163.)  He also reported that he could make sandwiches and cook spaghetti for the family.  (AR 163.)  And, Petitioner's counselor reported that Petitioner "provided an inconsistent history regarding discomfort with people, yet attends church as

well as Bible study, and takes son to swimming lessons." (AR 525.) Such activities do not suggest that Petitioner was limited by pain to the extent indicated on the function report.

Because of the substantial evidence in the record in support of the ALJ Kilroy's conclusion that Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms associated with his severe impairments were not credible, the Court finds that he did not err in reaching his conclusion.

## 3. Medical Expert Testimony as Related to the Hypothetical Question

As stated above, the ALJ determines a claimant's residual functional capacity, and considers all relevant evidence in the record when making this determination at step five of the sequential process. 20 C.F.R. § 404.1545(a). Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. Thus, a vocational expert's opinion is only relevant if it is in response to a hypothetical question that advances all of the petitioner's limitations. *Stephens v. Sec'y of Health, Ed. and Welfare*, 603 F.2d 36, 41 (8th Cir. 1979). If the hypothetical question fails to advance all of petitioner's limitations, the vocational expert's testimony is "fatally deficient." If an ALJ omits any of the claimant's subjective complaints when advancing the hypothetical question to the vocational expert, he must provide an explanation for the omission. *Light v. Social Sec.*

*Admin*., 119 F.3d 789, 793 (9th Cir. 1997).

The Court finds that ALJ Kilroy did not err in his characterization of the medical expert's testimony. During the hearing, ALJ Kilroy posed a hypothetical question to the vocational expert, Beth Cunningham, asking whether someone who had "mild limitations for ADLs, moderate for social" could perform Petitioner's past relevant work. (AR 80.) ALJ Kilroy then asked whether there would be "work available in statistically significant numbers that the person could perform using the hypothetical." (AR 81.) The vocational expert opined that such a person could not perform Petitioner's past relevant work, but there existed work available in statistically significant numbers using the hypothetical. (AR 81**.)** Examples included working as a document preparer, order clerk, or parking lot cashier. *Id.*

Based on the above opinion, ALJ Kilroy found that Petitioner maintained the ability to perform "light" level work with limitations on standing, sitting, balancing, stooping, kneeling, crouching, interaction with the public and co-workers, and where the work was routine and unskilled, and where new learning was on an occasional basis and was either visual or hands-on. ALJ Kilroy also noted the Petitioner could never crawl, and must avoid concentrated exposure to extreme temperatures and vibration, dangerous machinery and unprotected heights, distractions, and an environment involving high constant focus and stress. (AR 14.)

Petitioner argues that ALJ Kilroy failed to address with any specific findings or explanatory rationale his failure to include Petitioner's fluctuating mental functioning in

the hypothetical question posed to the vocational expert. (Pet. at 8-11, Dkt. 12.)

Petitioner further argues that Petitioner's fluctuating mental functioning is an important

factor in determining whether he could maintain employment. *Id.* Specifically, Petitioner

asserts that James Bruce, Ph.D. testified that Petitioner's level of severity with regard

toactivities of daily living fluctuate between mild and marked; maintaining social

functioning, marked; and concentration, persistence or pace, mild to marked. (AR 76-77.)

Yet, according to Petitioner, ALJ Kilroy failed to include these mental limitations in the

hypothetical question he posed to the vocational expert. (Pet. at 8-11, Dkt. 12.)

Respondent replies that ALJ Kilroy properly omitted elements in the hypothetical

question that were based only on Petitioner's self-reporting and not on any documented

evidence. (Reply at 6-7, Dkt. 15.) Specifically, Respondent highlights Dr. Bruce's

testimony that the record as a whole does not support the severity or frequency of

problems to which Petitioner had testified. *Id.*

Dr. Bruce's testimony regarding Petitioner's mental health issues is consistent with

the medical record as a whole, which is replete with evidence documenting Petitioner's

depression, bi-polar disorder, and other mental health issues. (*See, e.g.*, AR 282, 288,

289, 294, 301, 302, 313, 355, 359, 360, 362, 392, 397, 437, 445, 475, 490, 497, 503, 510,

515, 525, 532, 535, 538, 541, 548.) Likewise, Dr. Bruce's testimony is consistent with

Petitioner's subjective complaints. However, ALJ Kilroy concluded that Petitioner was

not credible and the Court has found, as summarized above in § 2, that ALJ Kilroy's

conclusion was supported by substantial evidence in the record. Therefore, the portions

of Dr. Bruce's testimony that rely upon Petitioner's self-reports constitute unsupported limitations which ALJ Kilroy properly excluded from his hypothetical question to the vocational expert. *Bayliss*, 427 F.3d at 1217.

Although Dr. Bruce testified that Petitioner's mental functioning fluctuates, he based his testimony regarding "marked" restrictions related to activities of daily living and concentration, persistence or pace, solely upon Petitioner's self-report. (AR 76.) Upon questioning by the ALJ about Petitioner's activities of daily living, Dr. Bruce responded, "Yes, sir, well he does fluctuate. When he's doing well mild, when he's doing poor and <u>by his report</u> three times a week he can't get out of bed that would probably fall within the marked range." (AR 76.) (Emphasis added.) Regarding social functioning, Dr. Bruce testified that Petitioner falls within the marked range, and did not present any conflicting self reports. (AR 76.) And, upon questioning regarding concentration, persistence and pace, Dr. Bruce referred to Petitioner's self reports: "When he's doing well he'll do well once he's got it. When he is in bed with the covers over his head and not responding to requests for assistance he won't be much good at all." (AR 77.)

Additionally, Dr. Bruce testified that the record as a whole does not contain any evidence of decompensation. (AR 77.) And, upon questioning by the ALJ about whether the record reflects the same extent or severity or frequency of severity of problems to which Petitioner testified, Dr. Bruce responded: "Well no sir, he was seen so infrequent by [mental health] providers." (AR 77.) And, "[medical providers] haven't described impairments to the extent [to which Petitioner testified.]" (AR 77.)

**MEMORANDUM DECISION AND ORDER - 19**

Based on the portions of Dr. Bruce's testimony which were supported by the record, ALJ Kilroy's hypothetical question included mild limitations associated with activities of daily living; marked difficulties for social functioning; and moderate difficulties for concentration, persistence or pace. (AR 13.) Each of the limitations included by ALJ Kilroy was supported by competent evidence; as such, the Court finds no error was committed by the ALJ's omission of the unsupported limitations due to fluctuating mental functioning as contended by Petitioner.

**4. Treating Source Opinion**

Rachel M. Swartz, M.D., was Petitioner's treating physician from September 14, 2007 to at least December 8, 2008. (AR 548.) Dr. Swartz opined on December 8, 2008, that Petitioner suffered from uncontrolled hypertension, acute renal failure, sleep apnea, bipolar disorder, psoriasis, progressively weak arms and shoulders that interfere with his concentration, cause excessive daytime sleepiness, in addition to difficulty walking (due to psoriasis on his feet) and using his upper extremities, and causing severe pain and numbness in his feet (due to diabetic neuropathy). (AR 20, 548.) ALJ Kilroy relied on Dr. Swartz's opinion and noted in his Decision the difficulties that Petitioner's conditions have on his concentration, daytime sleepiness, ability to walk and use his upper extremities, and the level of pain and numbness he has in his feet. (AR 20.) ALJ Kilroy also relied on Dr. Swartz's December 8, 2008 letter when finding Petitioner limited to working without distractions or hazards, routine and unskilled work not requiring high constant focus or stress. (AR 16, 19, 20, 548.) ALJ Kilroy specifically recognized Dr.

Swartz's long-term treating and examining relationship with Petitioner, addressed each of Petitioner's physical and mental conditions throughout his Decision, and incorporated Dr. Swartz's opinion into the residual functional analysis.

Nonetheless, Petitioner asserts that ALJ Kilroy erred at step four by failing to properly support his rejection of the treating source opinion with clear and convincing reasons.  (Pet. at 11-13, Dkt. 12.)  Because ALJ Kilroy did not explain why he rejected Dr. Swartz's opinion that Petitioner could not work, Petitioner contends he improperly rejected her opinion.  (*Id.* at 11.)

An ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).  And, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, ALJ Kilroy gave little weight to the portion of Dr. Swartz's opinion

regarding the ultimate issue of disability, specifically Dr. Swartz's opinion regarding whether there is any work activity in the national and regional economies that Petitioner can perform notwithstanding his significant limitations. (AR 20.) Petitioner argues that ALJ Kilroy did not provide any evidence that "contradicts the opinion offered by Dr. Swartz" relating to "why Petitioner's multiple impairments prevented him from maintaining employment." (Pet. at 11, Dkt. 12.) Petitioner particularly takes issue with ALJ Kilroy's statement: "it is not clear she appreciates the strict definition of 'disability' according to Social Security rules and regulations." (Pet. at 12 (quoting AR 20).) However, Petitioner is incorrect to the extent he argues that the ALJ summarily rejected Dr. Swart's opinion.

As ALJ Kilroy explained, he:

> considered [the symptoms discussed by Dr. Swartz]--to the extent that they are supported by medially determinable impairments--in developing a detailed and significantly limited residual functional capacity finding, often relying on [Petitioner's] own admission regarding his abilities. In this respect, the undersigned agrees that [Petitioner] is significantly limited by his impairments. However, the main difference appears to lie in the ultimate conclusion, that is, whether there is any work activity in the national and regional economies that [Petitioner] can perform notwithstanding his significant limitations. In terms of the ultimate conclusion, the undersigned gives Dr. Swartz's opinion little weight, as it is not clear she appreciates the strict definition of 'disability' under sections 216(i) and 223(d) of the Social Security Act. Moreover, the undersigned has utilized the resources of a vocation expert at Step 5 of the sequential evaluation process to determine whether a person with claimant's residual functional capacity could perform any jobs which exist in the economy.

(AR 20.)

Here, ALJ Kilroy retained a vocational expert "to determine whether a person with [Petitioner's] residual functional capacity could perform any jobs which exist in the economy."  ALJ Kilroy properly rejected Dr. Swartz's opinion that conflicted with that of the vocational expert.  *See* 20 C.F.R. § 404.1545 and 20 C.F.R. § 404.1566(e).  And, because Dr. Swartz opined regarding the ultimate issue of disability, ALJ Kilroy exercised his discretion to not be bound by that portion of Dr. Swartz's opinion.  *See Magallanes*, 881 F.2d at 751.  Thus, the Court is satisfied that ALJ Kilroy provided clear and convincing reasons for giving little weight to portions of Dr. Swartz's opinion and, therefore, did not commit error.

## 5.  Lay Witness Opinions

### A.  *Kedron Holland, PA-C*

In the instant case, Ms. Holland[3] was Petitioner's physician's assistant from March 17, 2006 through August 10, 2007.  (AR 329, 445.)  Ms. Holland diagnosed Petitioner with hypertension or controlled schizoaffective disorder, renal concerns, diabetes, and angina, and noted that Petitioner suffered from the following symptoms:  high blood pressure, dizziness, fatigue, headaches, occasional chest pain, depression, and manic symptoms.  (AR 445.)  Ms. Holland opined that Petitioner would need to lie down for three hours within an eight-hour workday, but that he would be unable to make it through

---

[3] Petitioner refers to "Kay Holland, a physician's assistant, who treated [Petitioner] for roughly two years."  The Court will conclude that Petitioner intended to refer to Kedron Holland, the physician's assistant who treated Petitioner for roughly two years.

the day even if he was allowed to alternate between sitting, standing, and walking.  (AR 19.)  ALJ Kilroy, noting that Ms. Holland is not a doctor, gave little weight to her opinion.  (AR 18.)  Accordingly, Petitioner argues that ALJ Kilroy rejected Ms. Holland's opinion without providing a basis for such rejection.  (Pet. at 14-15, Dkt. 12.)

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment.  20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v.Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999).  Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512).  However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently

conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

Here, ALJ Kilroy rejected Ms. Holland's opinion because it was not supported by the record, specifically because of inconsistencies between her progress notes and the residual functional capabilities questionnaire ("RFCQ"), as well as inconsistencies between her opinion and that of other treatment providers. (AR 18-19.) Further, ALJ Kilroy rejected Ms. Holland's diagnosis of schizoaffective disorder because neither Petitioner nor any other medical provider asserted that diagnosis per se.[4] (AR 19.)

ALJ Kilroy rejected Ms. Holland's diagnosis of renal concerns, because the record showed Petitioner suffered from renal failure on only one occasion in 2003 and has remained stable since that time. (AR 19.) The Court finds ALJ Kilroy's conclusion was correct. In February of 2003, Petitioner was hospitalized due to renal failure. (AR 264.) However, the record is devoid of any other instances of renal failure suffered by Petitioner after that point in time.

Likewise, ALJ Kilroy rejected Ms. Holland's diagnosis of diabetes, because two weeks prior to completing the RFCQ, Ms. Holland opined that Petitioner's diabetes was "stable." (AR 19.) Significantly, Ms. Holland reported this opinion in her progress notes

---

[4] Although ALJ Kilroy rejected Ms. Holland's diagnosis of schizoaffective disorder, the ALJ did not reject Petitioner's long-standing history of bipolar disorder or Petitioner's limitations related thereto. To the extent these two disorders may be related, therefore, ALJ Kilroy did not reject Ms. Holland's diagnosis in total.

the day prior to completing the RFCQ. (AR 401-403.) Because Ms. Holland's own progress notes conflict with her diagnosis of diabetes, ALJ Kilroy appropriately rejected that portion of her opinion.

Finally, ALJ Kilroy rejected Ms. Holland's opinion regarding Petitioner's alleged need to lay down for three hours, and his inability to make it through an eight-hour workday if allowed to alternate between sitting, standing, and walking, because those limitations were neither supported by Ms. Holland's own progress reports or by other treatment providers. (AR 19.) The Court has reviewed the record and confirmed it is devoid of evidence supporting Petitioner's need to lay down. Likewise, Ms. Holland's opinion that Petitioner was unable to work an eight-hour workday if he could alternate between sitting, standing and walking is not supported by the record as a whole or even by Ms. Holland's progress notes. (*See* AR 301-317, 329-331, 397-404, 413-420.) Therefore, ALJ Kilroy did not err by rejecting her opinions.

### B. *Kristina Thompson*

ALJ Kilroy noted that the "residual functional capacity assessment is supported, in large part, by the claimant's own admissions and the statement of his wife, Mrs. Thompson." (AR 20.) Further, ALJ Kilroy specifically discussed the contents of Mrs. Thompson's third party statement in his discussion about the Petitioner's testimony and credibility. *Id.* However, Petitioner argues that ALJ Kilroy summarily rejected Mrs. Thompson's statements without providing a basis for the rejection. (Pet. at 16, Dkt. 12*.)* The Court disagrees.

By discussing her testimony, ALJ Kilroy did not disregard it. Mrs. Thompson's statement was very similar to Petitioner's testimony, particularly regarding lifting, standing and sitting. (AR 153-176.) Because the ALJ found Petitioner's testimony not credible, those portions of Mrs. Thompson's testimony that were unsupported by the record and coincided with Petitioner's testimony properly could be disregarded. *Holzberg*, 2010 WL 128391 at *11. Thus, ALJ Kilroy did not err.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the Decision of the ALJ finding Petitioner not disabled. The decision of the Commissioner will be affirmed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Petitioner's Petition for Review (Dkt. 1) is **DISMISSED;**

2)     The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED.**

DATED:  March 29, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge